1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  ANKUR SHINGAL (CABN 303434)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7108
7       FAX: (415) 436-7234
        Ankur.Shingal@usdoj.gov
8
   Attorneys for United States of America
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14

15  UNITED STATES OF AMERICA,              )   CASE NO. CR 19-00100 VC
                                           )
16          Plaintiff,                     )   UNITED STATES' OPPOSITION TO
                                           )   DEFENDANT'S MOTION TO SUPPRESS AND
17      v.                                 )   REQUEST FOR EVIDENTIARY HEARING
                                           )
18  RAMON COFIELD,                         )
                                           )   Hearing Date: January 19, 2021
19          Defendant.                     )   Hearing Time: 1:30 p.m.
                                           )
20  _____

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

RELEVANT FACTS AND BACKGROUND .......................................................................1

I.  Background on Various Entities Involved in this Case ...............................................2

    A.  Background on Tumblr .........................................................................................2

    B.  Background on Google .........................................................................................2

    C.  Background on NCMEC and the CyberTipline ....................................................3

II. Factual Background ....................................................................................................4

    A.  Tumblr generated the subject CyberTip and submitted it to NCMEC ...............4

    B.  The CyberTip was submitted to SFPD Sgt. Alicia Worthington, and she
        subsequently obtained four state search warrants .............................................4

        1.  The Tumblr and Google warrants and returns ..........................................5

        2.  The AT&T warrant ....................................................................................6

        3.  The Residential warrant ...........................................................................7

ARGUMENT ........................................................................................................................8

I.  The Fourth Amendment is Not Implicated in this Case .............................................8

    A.  There is no Fourth Amendment violation because Tumblr is a private entity
        that searched Cofield's account in furtherance of its independent business
        interests ................................................................................................................8

    B.  Even if a "search" occurred, Cofield consented through Tumblr (and
        Google's) Terms of Service ................................................................................12

    C.  Neither NCMEC nor Sgt. Worthington Expanded the Scope of Tumblr's
        Private Search .....................................................................................................13

II. Each of SFPD's Search Warrants were Valid ...........................................................14

    A.  Sgt. Worthington's search warrants were based on probable cause ...................15

    B.  The allegedly false or omitted statements did not undercut probable cause.....................16

        1.  Sgt. Worthington did not make any false statement with regard to
        when the image was uploaded or the relevance of Cofield's Gmail
        account ......................................................................................................17

2.      The affidavits' statement that Cofield uploaded images to another user's blog does not undermine the Magistrate's finding of probable cause...............................................................................................20

3.      Sgt. Worthington did not intentionally or recklessly omit material facts, and in any event, there would be sufficient probable cause even if the affidavits were supplemented with those facts................................22

C.      The Tumblr and Google search warrants meet the Fourth Amendment's specificity requirements .................................................................24

III.    The Exclusionary Rule Does Not Apply in this Case.................................................26

A.      Sgt. Worthington acted in Good Faith ..............................................26

B.      The Inevitable Discovery exception applies ...........................................27

C.      The Exclusionary Rule is not appropriate in any event ..............................29

IV.     No *Franks* or Evidentiary Hearing is required ..........................................................29

CONCLUSION.........................................................................................................................30

# TABLE OF AUTHORITIES

## **Federal Cases**

*Davis v. United States*, 564 U.S. 229 (2011) ........................................................................ 29

*Franks v. Delaware*, 438 U.S. 154 (1978) ..................................................................... 29, 30

*Herring v. United States*, 555 U.S. 135 (2009) .......................................................... 26, 27, 29

*Illinois v. Gates*, 462 U.S. 213 (1983) ..................................................................... 15, 16, 18

*In re Grand Jury Subpoenas*, 926 F.2d 847 (9th Cir. 1991) ........................................... 24

*Fla v. Jimeno*, 500 U.S. 248 (1991) ................................................................................... 13

*United States v. Morel*, No. 14-CR-148-JL, 2017 WL 1376363 (D.N.H. Apr. 14, 2017) ...................... 12

*Katz v. United States*, 389 U.S. 347 (1967) ...................................................................... 12

*United States v. Pitts*, 6. F.3d 1366 (9th Cir. 1993) .......................................... 15, 18, 22

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ............................................................ 12

*Smith v. Maryland*, 442 U.S. 735 (1979) ............................................................................ 13

*United States v. Stratton*, 229 F.Supp.3d 1230 (D. Kan. 2017) ................................. 8, 12

*United States v. Ackerman*, 296 F. Supp. 3d 1267 (D. Kan. 2017) ........................... 11, 12

*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) .......................................... 11

*United States v. Bohannon*, 19-CR-00039-CRB, ECF No. 81 (N.D. Cal. Dec. 11, 2020) (attached as

   Gov't Ex. 5) ...........................................................................................................*passim*

*United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012) ................................................. 8

*United States v. Cleaveland*, 38 F.3d 1092 (9th Cir. 1994) ................................... 8, 9, 10

*United States v. Dozier*, 844 F.2d 701 (9th Cir. 1988) ............................................. 18, 21

*United States v. Drivdahl*, No. CR 13-18-H-DLC, 2014 WL 896734 (D. Mont. Mar. 6, 2014) ............. 10

*United States v. Garcia-Cruz*, 978 F.2d 537 (9th Cir. 1992) .......................................... 30

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) .................................................. 15, 25, 26

*United States v. Green*, 857 F. Supp. 2d 1015 (S.D. Cal. 2012)...................................... 8, 9, 10

*United States v. Hodges*, 3 F. App'x 608 (9th Cir. 2001) ........................................................ 30

*United States v. Jacobsen*, 466 U.S. 109 (1984)........................................................... 8, 13, 14

*United States v. Job*, 871 F.3d 852 (9th Cir. 2017) ................................................................. 21

*United States v. Jones*, 565 U.S. 400 (2012) .......................................................................... 12

*United States v. Keith*, 980 F. Supp. 2d 33 (D. Mass. 2013) ..................................................... 9

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) .................................................... 18, 20, 26

*United States v. Leon,* 468 U.S. 897 (1984)............................................................................ 26

*United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000) .................................................. 28

*United States v. McQuisten*, 795 F.2d 858 (9th Cir. 1986)...................................................... 30

*United States v. Meek*, 366 F.3d 705 (9th Cir. 2004).......................................................... 26, 30

*United States v. Miller*, 425 U.S. 435 (1976).......................................................................... 13

*United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008) ....................................... 20

*United States v. Nguyen*, 743 F. App'x 764 (9th Cir. 2018)................................................... 19

*United States v. Nora*, 765 F.3d 1049 (9th Cir. 2014).......................................................... 21

*United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018) ......................................................... 24

*United States v. Reeves*, 210 F.3d 1041 (9th Cir. 2000) ......................................................... 29

*United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010)...................................................... 8

*United States v. Ruiz*, 758 F.3d 1144 (9th Cir. 2014) ............................................................ 23

*United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) ................................ 24

*United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) ...................................................... 19, 20

*United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1976) ........................................................ 10, 12

*United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) ......................................................... 24

*United States v. Staves*, 383 F.3d 977 (9th Cir. 2004) ................................................................ 30

*United States v. Stevenson*, 727 F.3d 826 (8th Cir. 2013) .......................................................... 8

*United States v. Tham*, 960 F.2d 1391 (9th Cir. 1992) ......................................................... 29, 30

*United States v. Thayer*, No. CR-07-812-DLJ, 2008 WL 5102529 (N.D. Cal. Dec. 2, 2008) ................. 27

*United States v. Tosti*, 733 F.3d 816 (9th Cir. 2013) ......................................................... 8, 14

*United States v. Viramontes*, 16-CR-508-EMC, ECF No. 33 (N.D. Cal. March 13, 2018) (attached as

    Gov't Ex. 6)…………………………………………………………………… …11, 12

*United States v. Walther*, 652 F.2d 788 (9th Cir. 1981) ......................................................... 11

*United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2019 WL 6716357

    (N.D. Cal. Dec. 10, 2019)……………………………………………………….………*passim*

**Federal Statutes**

18 U.S.C. § 2252 ........................................................................................................ 1

18 U.S.C. § 2258A ........................................................................................................ 4

The United States hereby files its Opposition to Defendant Ramon Cofield's Motion to Suppress. (Dkt. No. 55). This Opposition is based upon the files and records of the case together with the following statement of facts and memorandum of points and authorities, as well as any attached exhibits.

## INTRODUCTION

Defendant Ramon Cofield requests that this Court suppress the fruits of four separate search warrants—to Tumblr, Google, AT&T, and for Cofield's residence—that led to evidence that he possessed a significant amount of child pornography images.

The Court should deny his motion for numerous reasons. *First*, the Fourth Amendment is not implicated in this case because Tumblr searched his account as a private entity and pursuant to its own business interests, and in any event, Cofield consented to the search. Subsequent reviews of the same image by the National Center for Missing and Exploited Children (NCMEC) and law enforcement— specifically, San Francisco Police Department Sergeant Alicia Worthington (née Castillo)—did not enlarge the scope of the search, therefore avoiding any constitutional issue. *Second*, there was ample probable cause underlying each of the four warrants. Cofield presents a number of arguments that are either against the weight of precedent or seek to undermine the warrants through hypertechnical parsing and flyspecking of the underlying affidavits that the United States Supreme Court and the Ninth Circuit have rejected. *Third*, to the extent that the Court concludes that there is a constitutional violation here, the exclusionary rule is inapplicable because Sgt. Worthington acted in good faith, the inevitable discovery exception applies, and the harms of suppression far outweigh the limited (if any) benefits of deterrence. Cofield likewise fails to make the requisite showing for a *Franks* or evidentiary hearing.

As such, in light of the facts and legal precedent—including two recent cases from this District in *United States v. Wolfenbarger* and *United States v. Bohannon*, which rejected the same arguments that Cofield raises here—the government submits that Cofield's motion should be denied.

## RELEVANT FACTS AND BACKGROUND

On February 28, 2019, Cofield was charged by Indictment with a violation of 18 U.S.C. § 2252(a)(4) and (b)(2) (Possession of Child Pornography). The case against Cofield began when Tumblr submitted CyberTipline Report 2539044 to NCMEC. *See* Def. Ex. A.

I.      **Background on Various Entities Involved in this Case**

      A.      **Background on Tumblr**

          Tumblr is a private company that was founded in 2007.  Gov't Ex. 1 (Declaration of Marlene Bonnelly (Tumblr)) ¶ 2.  Tumblr is currently owned by Automattic, Inc., and was previously owned by Yahoo! and Verizon.  *Id.*  Based on its company-wide held belief that "Child Sexual Abuse Material" is "abhorrent and has no place on any" of its platforms and in an effort to "combat the exploitation of children" in its and society's interest, Tumblr has a "zero tolerance policy" regarding such material on its platforms.  *Id.* ¶ 4.  To detect child pornography, Tumblr uses a mix of automatic tools—including PhotoDNA, which is an automated image-detection technology used to identify illicit images—and human review through content moderation experts.  *Id.* ¶ 3.  PhotoDNA uses image file hash values (i.e., a unique digital signature) to automatically compare users' uploaded content to known child pornography images.  *See Microsoft PhotoDNA*, https://www.microsoft.com/en-us/photodna.

          By using any of Tumblr's platforms, all users agree to Tumblr's Privacy Policy and Terms of Service.  *Id.* ¶ 5 (attaching applicable Privacy Policy and Terms); *id.* at 3, 13.[1]  The Privacy Policy provides that a user "consent[s] to the collection, transfer, manipulation, storage, disclosure, and other uses of your information."  *Id.* at 3.  Further, under section "Information Disclosed for Our Protection and Protection of Others", Tumblr advises all users that it reserves the "right to access, preserve, and disclose any information as we reasonably believe is necessary, in our sole discretion, to (i) satisfy any . . . legal process, governmental request, or governmental order, (ii) enforce this Privacy Policy and our Terms of Service, including investigation of potential violations . . . ."  *Id.* at 9-10.

      B.      **Background on Google**

          Google is a multinational corporation that boasts hundreds of internet-based products.  To access the majority of Google's products—including Google+, Google Photos, Google Drive, and Gmail—a user must create a Google account with a single username and password.  *See Create a Google Account*, https://support.google.com/accounts/answer/27441?hl=en&ref_topic=3382296.  Google's products, and particularly the four outlined above, are interrelated and can often store the same data, including

---

[1] The government's page citations for this declaration (Gov't Ex. 1) refer to the page number on the top right of the document.

photographs.  For example, Google itself has recognized that many of its users "store [their] photos on both Google Drive and Google Photos."  *See Changing how Google Drive and Google Photos work together*, https://blog.google/products/photos/simplifying-google-photos-and-google-drive/.  In fact, prior to June 12, 2019— i.e., the time relevant to this case—photos that a user placed in "Google Drive storage [would] also appear in Google Photos by default."  *How to Use Google Photos to Store an Unlimited Amount of Photos*, https://www.howtogeek.com/227084/how-to-use-google-photos-to-store-an-unlimited-amount-of-photos/.  Likewise, a user can send a photograph saved on Google Drive to someone else via Gmail as an attachment.  *See Send Google Drive attachments in Gmail*, https://support.google.com/mail/answer/2487407?co= GENIE.Platform%3DAndroid&hl=en.

All users must agree to Google's Terms of Service and Privacy Policy.  *See* Gov't Ex. 2 (Google's Terms, Oct. 25, 2017); Gov't Ex. 3 (Google's Privacy Policy, Oct. 2, 2017).[2]  In relevant part, Google's Terms make clear that Google "may review content to determine whether it is illegal or violates our policies, and we may remove or refuse to display content that we reasonably believe violates our policies or the law," and that "[b]y using our Services, you agree that Google can use [the user's personal] data in accordance with our privacy policies."  Gov't Ex. 2 at 1-2.  The Privacy Policy in turn provides that Google "will share personal information . . . if we have a good-faith belief that access, use, preservation or disclosure of the information is reasonably necessary to [(i)] meet any applicable law, regulation, legal process, or enforceable governmental request . . . [(iv)] protect against harm to the rights, property or safety of Google, our users, or the public as required or permitted by law."  Gov't Ex. 3 at 8.

### C.    Background on NCMEC and the CyberTipline

NCMEC is a private, nonprofit corporation established to help find missing children, reduce child sexual exploitation, and prevent child victimization.  *See* Gov't. Ex. 4 (Affidavit of John Sheehan (NCMEC)), ¶ 2.  NCMEC created the CyberTipline program in 1998 to organize tips and leads about child sex trafficking, molestation, and exploitation.  *Id.* ¶ 3.  The majority of CyberTipline reports relate to apparent child pornography and are from electronic service providers ("ESPs").  *Id.*  Importantly,

---

[2] The government cites the Terms of Service and Privacy Policy that would have been in effect at the time of the search.  To the extent that different versions apply, they are substantially the same.

1  ESPs are not required to monitor their services for apparent child pornography, though they are required

2  by federal law to report any child pornography found on their platforms.  18 U.S.C. § 2258A.  Tumblr

3  and Google are two examples of ESPs that sometimes provide tips to NCMEC.

4  **II.    Factual Background**

5      **A.    Tumblr generated the subject CyberTip and submitted it to NCMEC**

6          As reflected in CyberTipline Report 25390444, generated on November 8, 2017, Tumblr

7  submitted a CyberTip notifying NCMEC that it had located a child pornography image on a Tumblr

8  user's account.  Def. Ex. A at 3.  While Tumblr first became aware of the image via a PhotoDNA

9  search, a Tumblr employee also reviewed the image prior to its submission to NCMEC.  Gov't Ex. 1, ¶

10  7.  Tumblr identified the user who uploaded the image by his username (chaz2076), email address

11  (rxxcofield@gmail.com), and IP address (162.238.124.187).  Def. Ex. A at 3.  The CyberTipline Report

12  noted that the suspect's last login was on March 31, 2014, and that Tumblr had terminated the blog so

13  that it could no longer be accessed.  *Id.*  The CyberTip also reflects that Tumblr had uploaded the

14  suspected child pornography image and that "[a] representative of the company ha[d] reviewed the

15  image[] in th[e] report."  Def. Ex. A at 4.

16          NCMEC's review noted that the IP address came back to an AT&T U-verse account located in

17  the San Francisco Metro Area.  *Id.* at 9.  Notably, the CyberTipline report indicates that Tumblr's

18  providing of all information aside from the "Incident Type" and "Incident Time" was "voluntary and

19  undertaken at the initiative of" Tumblr.  *Id.*; Gov't Ex. 4, ¶ 4. NCMEC also reviewed the image and

20  concluded that it appeared to be child pornography.  Def. Ex. A at 10.

21      **B.    The CyberTip was submitted to SFPD Sgt. Alicia Worthington, and she
         subsequently obtained four state search warrants**

22

23          On November 30, 2017—22 days after Tumblr submitted the CyberTip—SFPD received the

24  CyberTip from NCMEC.  Declaration of SFPD Sgt. Alicia Worthington ("Worthington Decl.") ¶ 3.

25          During her investigation to determine who posted the child pornography image on Tumblr, Sgt.

26  Worthington obtained four search warrants: (1) a December 11, 2017 warrant to Tumblr for specific

27  information associated with email address rxxcofield@gmail.com and username chaz2076, Def. Ex. B

28  ("Tumblr warrant"); (2) a December 11, 2017 warrant to Google for specific information associated

with email address rxxcofield@gmail.com, Def. Ex. C ("Google warrant"); (3) a December 21, 2017 warrant to AT&T for subscriber information associated with a phone number associated with rxxcofield@gmail.com, Def. Ex. D ("AT&T warrant"); and, after the returns from the first three warrants revealed more child pornography associated with Cofield's internet presence, (4) a May 1, 2018 residential search warrant for Cofield's residence, Def. Ex. E ("Residential warrant").

### 1.    The Tumblr and Google warrants and returns

On December 11, 2017—less than two weeks after receiving the CyberTip and 33 days after Tumblr first identified the image and submitted the Tip—Sgt. Worthington sought and obtained search warrants from Tumblr and Google for subscriber information associated with the username and email address, including associated email addresses, telephone numbers, and other contact information.  The warrants also sought IP log information, such as history of user access, and relevant content from 01/01/2014 to present (December 2017), including—from Tumblr—communications with individuals, images, links, and videos uploaded or saved on the account and—from Google—emails from Gmail and photos from Google Drive and Google Photos.  *See* Def. Ex. B at 228; Def. Ex. C at 173.

Sgt. Worthington's search warrant affidavits for both warrants included a probable cause analysis based on the CyberTip she had received from NCMEC.  Def Ex. B at 231-32; Def. Ex. C at 176-77.  She described briefly that Tumblr "is a microblogging and social networking website" and some details about how the site is used.  *Id.*  Then Sgt. Worthington described the key information learned from the CyberTip, generated on November 8, 2017:

> Tumblr reported the following:

> On 11/08/17 at 21:12:00 UTC a Tumblr with the user name **chaz2076** with the IP Address of **162.238.124.187** utilizing the email of rxxcofieldgmail.com uploaded the filename: **78180748604.jpg** to their Tumblr blog address of **chaz2076.tumblr.com** in early part of 2014, beginning in February.

*Id.*  Sgt. Worthington then explained the underlying child pornographic image she viewed, as well as the online research she conducted in late 2017, which uncovered multiple child pornography photos all associated with this same Tumblr username:

> I reviewed the image (filename: **78180748604.jpg**) and it is described as follows:

> The image is of a fully nude female child between the approximate ages of 9-12. The female child is sitting upright on her buttocks with her legs spread exposing her breasts and vagina to the camera while her left hand rests behind her head and her right hand is on the

ground supporting her seated position. The photograph appears to have been taken in an undisclosed, outside wooded area.

I conducted an online search for **chaz2076.tumblr.com** and discovered several archived images of nude underage teenage males exposing their genitals that appeared to have been uploaded to Tumblr by **chaz206** to another Tumblr user's blog in 2014.

*Id.* After the above language, Sgt. Worthington included, in part, that "based on training and experience and information supplied in the affidavit" disclosure of the requested materials "w[ould] demonstrate the sexual proclivity, inclination, preference, and activities of the person under investigation, providing evidence that will tend to show the person under investigation committed a felony, to wit: 311.11(a)-Possession of Child Pornography."  *See* Def. Ex. B at 232; Def. Ex. C at 177.

Sgt. Worthington received the Google search warrant results on December 18, 2017. Worthington Decl. ¶ 13.  The Google returns provided further evidence of Cofield's possession of child pornography, including numerous photographs of underage males and females exposing their genitalia, and chats from Google Hangouts, Google's communication platform, that showed Cofield and a self-identified 14-year-old individual engaging in sexually explicit conversation.  *Id.*; Def. Ex. D at 111-13. The returns also pointed Sgt. Worthington to identity-related information, including a phone number associated with the rxxcofield@gmail.com email address ("subject phone number"), as well as profile photographs that SFPD later used to positively identify Cofield by comparison to San Francisco arrest records.  *Id.*  A subsequent records check for the subject phone number revealed that it was associated with a Facebook page for Ramon Cofield.  *Id.*  SFPD then conducted a criminal check on Ramon Cofield, and found that he is a convicted sex offender based on a prior conviction in the Northern District of California for possession of child pornography.  *Id.* ¶ 14.

More than three months after receiving Google's returns, in February 2018, Sgt. Worthington received the returns from the Tumblr search warrant.  *Id.* ¶ 17.  The returns revealed approximately 1,000 images of suspected child pornography associated with Cofield's Tumblr account.  *Id.*

### 2.     The AT&T warrant

Upon receiving the subject phone number in the Google returns on December 18, 2017, Sgt. Worthington obtained the AT&T warrant three days later, on December 21, 2017.  *Id.* ¶ 15; Def. Ex. D. The search warrant sought "[a]ll account information, email addresses, passwords, subscriber

information, and methods of payment associated with" the subject phone number.  Def. Ex. D at 108.

Sgt. Worthington also included in the probable cause analysis similar language from her prior affidavits

for the Google and Tumblr warrants discussing the relevant information from the CyberTip, and added,

among other evidence, that she received the subject phone number from Google returns and conducted

an Accurint search—a LexisNexis-based public information search—to confirm that the carrier was

AT&T wireless.  *Id*. at 111.

The next day, on December 22, 2017, AT&T provided the subscription information including an

account number, that the account holder's name was Ramon Cofield, his address, and that his account

status was active.  Worthington Decl. ¶ 16; Def. Ex. E at 46.  The provided address was also listed as

Cofield's address in state sex offender registry information.  Worthington Decl. ¶ 16.

### 3.    The Residential warrant

Based on the returns from the other search warrants, Sgt. Worthington obtained a warrant for

Cofield's residence on May 1, 2018.  Def. Ex. E.  The warrant permitted SFPD to search Cofield's

person, residence, and, among other items, "[a]ny cloud storage applications found on any media

device."  *Id*. at 39.  Sgt. Worthington's search warrant affidavit set forward various evidence, including

the initial CyberTip information; the steps she took to identify Cofield from his Tumblr username and

Google email address; and that she then subsequently found the residence's address in the AT&T

warrant returns.  *Id*. at 42, 46.

SFPD executed the search warrant on Cofield's residence on May 3, 2018, and seized a laptop

computer; six cellular phones; two DVDs; a piece of paper listing a Tumblr account, the email address

rxxcofield@gmail.com, and what appeared to be passwords to those accounts; and, letters addressed to

Cofield as indicia of occupancy.  Worthington Decl. ¶ 19.  A search of the devices has revealed

hundreds of images of child pornography.  *Id*.

Cofield was subsequently interviewed by law enforcement and, after receiving his *Miranda*

warnings, admitted among other facts that the subject phone number and rxxcofield@gmail.com were

his and that he possessed photos of underage children (between ages 13-17) from Tumblr.[3]  *Id*. ¶ 20.

---

[3]Although he acknowledges his incriminating statements, *see* Mot. at 1, Cofield has not raised
any suppression issues with respect to those statements.  To the extent that he does so on Reply, the

**ARGUMENT**

Cofield presents a number of arguments regarding the propriety of each of the four warrants in this matter.  None of his claims has merit and, to the extent that any do, none warrant suppression or a *Franks* hearing.

## I.     The Fourth Amendment is Not Implicated in this Case

### A.     There is no Fourth Amendment violation because Tumblr is a private entity that searched Cofield's account in furtherance of its independent business interests

Cofield's opening argument, Mot. at 10-13, fails because Tumblr is not a government actor.  The Fourth Amendment constrains only government action and its "proscriptions on searches and seizures are inapplicable to private action."  *United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013)); *United States v. Jacobsen*, 466 U.S. 109, 129 (1984).

Under a government-agent theory—which Cofield sets forth here, *see* Mot. at 11—the relevant inquiry to determine whether a private party has acted as a government agent is: "(1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further [its] own ends."  *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1994) (citation omitted).  A defendant must show that the government knew of and acquiesced to a particular search, not just a pattern of behavior.  *United States v. Green*, 857 F. Supp. 2d 1015, 1018 (S.D. Cal. 2012) ("While the government generally knew that AOL, and other internet service providers, search emails for child pornography, there is no evidence (or argument) in the record to suggest that the government knew of or acquiesced in the search of Defendant's specific email account.").  Moreover, the private nature of the search is "not negated by any dual motive to detect or prevent crime or assist the police."  *Cleaveland*, 38 F.3d at 1094.

As Cofield himself recognizes, *see* Mot. at 13, courts have uniformly rejected the argument that electronic service providers like Tumblr act as government agents when they search user accounts.[4]  As

---

government reserves the right to file supplemental briefing addressing such arguments.

[4] *See, e.g., United States v. Cameron*, 699 F.3d 621, 636–38 (1st Cir. 2012) (rejecting government actor theory for Yahoo); *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013) (AOL); *United States v. Richardson*, 607 F.3d 357, 366 (4th Cir. 2010) (AOL); *United States v. Tatomer*, 18-CR-00034 HDM, 2019 WL 1546939, at *3 (D. Nev. Apr. 9, 2019) (Skype); *United States v. Rosenow*, 17-CR-03430 WQH, ECF No. 87, at 13-14 (S.D. Cal. Nov. 20, 2018) (Yahoo); *United States v. Stratton*, 229 F.Supp.3d 1230, 1237–38 (D. Kan. 2017) (Sony PlayStation Network); *United*

1    Judge Koh explained last year in *United States v. Wolfenbarger*: "district courts in this district and

2    circuit courts around the country have repeatedly rejected the contention that an ISP's search of its own

3    user's account and subsequent report to NCMEC of child pornography renders the ISP a government

4    agent." 2019 WL 6716357, at *13 (N.D. Cal. Dec. 10, 2019). Most recently, Judge Breyer rejected this

5    exact argument, holding that the defendant's claim that Microsoft acted as a government agent failed

6    because there was no "government involvement" that initiated or directed Microsoft's search for the

7    illicit images underlying that case. *See United States v. Bohannon*, 19-CR-00039-CRB, ECF No. 81 at 7

8    (N.D. Cal. Dec. 11, 2020) (attached as Gov't Ex. 5). So too here.

9           Recognizing the avalanche of case law directly contrary to his position, Cofield contends that

10   Verizon's (previously Tumblr's parent company) long-standing partnership with NCMEC (which

11   Cofield claims is a law enforcement agency), *see* Mot. at 7, 13, somehow establishes that Tumblr's

12   search of Cofield's files constitutes law enforcement activity. This argument fails for two reasons: (1) it

13   overstates Tumblr's relationship with NCMEC; and (2) even accepting *arguendo* that NCMEC is a

14   government agency, Tumblr's actions do not satisfy either prong of the *Cleaveland* analysis.

15          First, Tumblr's relationship with NCMEC (via Verizon) in no way suggests that it was acting as

16   a government agent. As a starting point, Cofield fails to present *any* authority that Tumblr's (or

17   Verizon's) relationship with NCMEC is categorically different from NCMEC's relationship with

18   various other companies that likewise identify child exploitation material. *See* Mot. at 7-8. Cofield's

19   citations themselves identify the flaw in his argument. For example, the fact that Verizon Media is a

20   "corporate sponsor at the 'Protector' level" suggests nothing when *nineteen other, private companies*

21   qualify for that same designation, including Pokémon, Disney, and LexisNexis. *See NCMEC – Our*

22   *Corporate Sponsors*, https://www.missingkids.org/supportus/our-corporate-partners; Mot at 7-8.

23   Likewise, Cofield's citation to Yahoo!'s status as a founding member of the Technology Coalition is

24   immaterial because the Coalition is touted to be an "Industry-Wide Movement." *See* Press Release,

25   *Google Joins Industry-Wide Movement to Combat Child Pornography*,

26

27   ────────────────

28   *States v. Lien*, No. 16-CR-00393-RS-1, 2017 U.S. Dist. LEXIS 188903, at *4–5 (N.D. Cal. May 10,
     2017) (Google); *United States v. Keith*, 980 F. Supp. 2d 33, 40 (D. Mass. 2013) (AOL); Green, 857 F.
     Supp. 2d at 1018–19 (S.D. Cal. 2012) (AOL).

1  https://www.icmec.org/press/google-joins-industry-wide-movement-to-combat-child-pornography/.  As

2  Judge Breyer observed in rejecting this same argument in *Bohannon*, accepting Cofield's argument

3  would effectively mean that "anything that private persons routinely do and that helps prevent crime

4  could constitute government action."  Gov't Ex. 5 at 7.

5      Second, even if Cofield was correct in his characterization of Tumblr and NCMEC's relationship

6  (he is not), he fails to connect that relationship to the controlling legal standard under *Cleaveland*.  First,

7  there is no evidence that the government knew about or acquiesced to Tumblr's search of Cofield's

8  account; indeed, Sgt. Worthington's declaration that she did not know about the image until she

9  reviewed the CyberTip and at no point directed Tumblr to look for child pornography.  Worthington

10  Decl. ¶ 4.  Even accepting *arguendo* Cofield's claim that NCMEC qualifies as a government agency,

11  NCMEC's sworn affidavit makes clear that it only learned of Tumblr's internal investigations *after*

12  Tumblr reported its findings via the CyberTipline.  *See* Gov't Ex. 4, ¶¶ 12, 4.  This falls far short of

13  *Cleaveland*'s first prong and is fatal to Cofield's argument.  *See Bohannon,* Gov't Ex. 5, at 8 (rejecting

14  similar claim even after assuming *arguendo* that NCMEC was a government agency because

15  "NCMEC's participation in this series of investigations began when Microsoft sent NCMEC the

16  CyberTip"); *Green*, 857 F.Supp.2d at 1018.  Timing is vitally important here: "[O]nce a private search is

17  completed, the subsequent involvement of government agents does not retroactively transform the

18  original intrusion into a governmental search."  *United States v. Drivdahl*, No. CR 13-18-H-DLC, 2014

19  WL 896734, at *4 (D. Mont. Mar. 6, 2014) (quoting *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir.

20  1976)).

21      Cofield likewise fails to meet *Cleaveland*'s second prong because Tumblr's conduct was not

22  primarily "intended to assist law enforcement efforts."  *Cleaveland*, 38 F.3d at 1093.  To make the

23  necessary showing, it would not be enough for Cofield to demonstrate that a desire to help law

24  enforcement played a part in Tumblr's motivation, because a private party's "legitimate, independent

25  motivation" is "not negated by any dual motive to detect or prevent crime or assist the police."  *Id.* at

26  1094; *see also Wolfenbarger*, 2019 WL 6716357, at *16.  Instead, Cofield must meet a more-demanding

27  standard: that Tumblr's independent motivations were "overridden" by a desire to assist law

28  enforcement.  *Cleaveland*, 38 F.3d at 1094.  Cofield does not even attempt to meet this hurdle: he

presents no argument that Tumblr acted in a way divorced from its own independent motivations to assist law enforcement here.  And Tumblr's declaration indicates the opposite: Tumblr polices its own platform as a matter of company policy and because it believes doing so is in its own and society's interest.  Gov't Ex. 1, ¶ 4 (further stating: "This content is abhorrent and has no place on any of our platforms").

Cofield's reliance on *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981) is unavailing for this exact reason.  *See* Mot. at 13.  In *Walther*, the Ninth Circuit found that a private actor, an established DEA confidential informant, had acted as a government "instrument or agent" when he searched Walther's baggage because he had been paid $800 for his previous investigative efforts.  *Id.* at 790-91. The court, however, took pains to "emphasize the narrowness of [its] holding," stating "[w]e merely hold that the government cannot knowingly acquiesce in and encourage directly or indirectly a private citizen to engage in activity which it is prohibited from pursuing where that citizen *has no motivation other* than the expectation of reward for his or her efforts."  *Id.* at 793 (emphasis added).  Courts in this District have subsequently and consistently rejected attempts to extend *Walther* to voluntary searches conducted by private companies like Tumblr.  *See Wolfenbarger*, 2019 WL 6716357, at *16 (finding that courts have "consistently" distinguished *Walther* on the grounds that providers "are not paid informants and are not motivated by the promise or potential of a government reward" (citation omitted)); *Lien*, 2017 U.S. Dist. LEXIS 188903 at *7-8  "*Walther* is unpersuasive" because "Google is not a paid informant," and monitors its services to ensure they do not become "a haven for abusive content"); *United States v. Viramontes*, 16-CR-508-EMC, ECF No. 33 at 6-7 (N.D. Cal. March 13, 2018) (Dropbox) (attached as Gov't Ex. 6); *Bohannon*, Gov't Ex. 5, at 7 (Microsoft).[5]

The same reasoning applies here: Tumblr investigated the child pornography image in its own interests and consistent with its own beliefs, and was not encouraged nor rewarded by the government to

---

[5] Furthermore, Cofield's reliance on *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), is misplaced.  *Ackerman* held merely that the government may have violated Ackerman's Fourth Amendment rights, but explicitly reserved the argument that the third-party doctrine might preclude Ackerman's Fourth Amendment claims.  *Id.* at 1308.  On remand, the District Court found no violation of Ackerman's Fourth Amendment rights.  *United States v. Ackerman*, 296 F. Supp. 3d 1267, 1276 (D. Kan. 2017), *aff'd*, 804 F. App'x 900 (10th Cir. 2020).  The Circuit Court's decision was also premised upon the fact that the ISP "never opened the email itself," 831 F.3d at 1306, which fundamentally distinguishes it from the instant case because Tumblr did view the subject image

investigate.  Tumblr did not somehow morph into a government agent simply because its own reasons coincided with assisting law enforcement.

### B.    Even if a "search" occurred, Cofield consented through Tumblr (and Google's) Terms of Service

Cofield's motion also falters because he has no Fourth Amendment protected interest in the child pornography images at issue—including the image that initiated this case—given that he consented to Tumblr and Google's search for such images.  To have a valid Fourth Amendment interest in the images, Cofield must show that the government either intruded on his reasonable expectation of privacy, *Katz v. United States*, 389 U.S. 347, 353, 361 (1967) (Harlan, J., concurring), or trespassed upon his physical property, *United States v. Jones*, 565 U.S. 400, 409 (2012).  This he cannot do.

It is "well settled" that one of the exceptions to both a warrant and probable cause is if the search is "conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  One such way to alert users that their information uploaded or stored on internet storage devices or platforms is not confidential is by requiring them to agree to the service provider's terms of service and/or privacy policies.  Lower courts have seized onto this issue, along with more general freedom of contract principles, to find that users do not have an objective expectation of privacy in the contents of their accounts if the service provider's terms of service disclose that they are subject to monitoring for illegal content.[6]  In this District, Judge Chen likewise held that a defendant had no Fourth Amendment interest in his images of child pornography because he "consented to Dropbox's search of his files." *Viramontes*, Gov't Ex. 6, at 10-11.  Judge Chen noted that Dropbox's terms of service "unequivocally permit Dropbox to 'review your conduct and content for compliance with these Terms and our Acceptable Use Policy.'" *Id.* at 11.  Because these provisions "could hardly mean anything other than a warning to users that Dropbox could search their files for unlawful pornography," Judge Chen reasoned it was objectively unreasonable for the defendant to expect privacy in those images. *Id.* at 12.  Judge

---

[6] *See United States v. Wilson*, No. 15-CR-02838-GPC, 2017 WL 2733879, at *7 (S.D. Cal. June 26, 2017) (finding that the defendant had no objective expectation of privacy because he agreed to Google's terms of service, which alert users to Google's monitoring for illegal content, when he created his account); *United States v. Ackerman*, 296 F.Supp.3d 1267, 1271-73 (D. Kan. 2017), *aff'd*, 804 F. App'x 900 (10th Cir. 2020) (same for AOL); *Stratton*, 229 F.Supp.3d at 1242 (Sony); *United States v. Morel*, No. 14-CR-148-JL, 2017 WL 1376363, at *6-7 (D.N.H. Apr. 14, 2017) (Imgur).

Breyer concluded the same in *Bohannon*: "Here, even if Microsoft were acting as a government agent, Bohannon consented to Microsoft's PhotoDNA search by agreeing to Microsoft's terms of service . . . . Thus, even were Microsoft acting as a government agent, its PhotoDNA search was reasonable under the Fourth Amendment."  Gov't Ex. 5 at 9.

The same analysis is applicable here.  By using Tumblr and Google's services, Cofield agreed to each companies' relevant terms of service and privacy policy.  Those terms and policies in turn explicitly advised Cofield that each company actively monitors its platform for illicit user content and that each would disclose such content to law enforcement to comply with legal process.  *See* Gov't Ex 1 at 10 (Tumblr reserving the right to "access, preserve, and disclose any information" in its "sole discretion" to comply with legal process"); Gov't Ex. 3 at 8 (similar language for Google).  Therefore, any subjective expectation that child pornography on Cofield's Tumblr or Google platforms would not be shared with law enforcement is objectively unreasonable given Cofield's consent to the applicable terms and privacy policies.  *See Jacobsen*, 466 U.S. at 122.  Stated differently, a "typical reasonable person," *Fla. v. Jimeno*, 500 U.S. 248, 251 (1991), would have understood both companies' terms and policies to allow each to search for and disclose content that is illegal or harmful to minors.[7]  As such, because Cofield consented to Tumblr and Google's actions, there is no Fourth Amendment violation.

## C.    Neither NCMEC nor Sgt. Worthington Expanded the Scope of Tumblr's Private Search

The Court need not consider whether NCMEC or the government's searches of the image from the CyberTip violated the Fourth Amendment because once Tumblr reviewed the image—which the CyberTip expressly states that it did, *see* Def. Ex. A at 4, 8; Gov't Ex. 1, ¶ 7—neither NCMEC nor the government was prohibited from conducting the same search under the Fourth Amendment.[8]  As the

---

[7] Along the same line of reasoning, Cofield's claim is barred under the third-party doctrine. Under that doctrine, the Supreme Court has held that a "person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979); *United States v. Miller*, 425 U.S. 435, 440-43 (1976).  Here, Cofield agreed that Tumblr and Google could access, review, and even disclose his content.  Because Cofield therefore shared his content with those parties, any expectation of privacy on Cofield's part would be objectively unreasonable.  *See Bohannon*, Gov't Ex. 5 at 11 n.5 (holding consistently and stating "[t]he Court need not extend this doctrine to the full contents of a cloud storage account to conclude that it applies here").

[8] To be clear, the government does not concede that NCMEC acted as a government agent. However, that argument is irrelevant for the reasons stated in this section.

1    Ninth Circuit explained in *Tosti*, once a private entity has frustrated an individual's "original expectation

2    of privacy" by conducting a search itself, "the Fourth Amendment does not prohibit governmental use of

3    the now-nonprivate information."  733 F.3d at 821 (the Fourth Amendment is "implicated only if the

4    authorities use the information with respect to which the expectation of privacy has not already been

5    frustrated" (quoting *Jacobsen*, 466 U.S. at 117)).

6        Here, because a Tumblr representative reviewed the image prior to submitting it to NCMEC, *see*

7    Gov't Ex. 1, ¶ 7, no Fourth Amendment violation occurred because the initial search and review of the

8    image was conducted by Tumblr, a private actor, and there was no enlargement of the scope of that

9    search by NCMEC or law enforcement agents, who merely examined the same image that had been

10   disclosed by Tumblr.[9]  *See Bohannon*, Gov't Ex. 5 at 11 ("[B]ecause Microsoft had the lawful and

11   practical ability to view and disclose the image, 'frustration' of Bohannon's 'original expectation of

12   privacy' had already occurred." (citing *Tosti*, 733 F.3d at 821)).  And, because the image had already

13   "indisputably" been inspected, "[the officer's] inspection could not have caused any further intrusion."

14   *Id*.  Consequently, because NCMEC nor the government's search enlarged the scope of Tumblr's search,

15   there was no Fourth Amendment violation.

16   **II.    Each of SFPD's Search Warrants were Valid**

17       Cofield next claims that each of the four SFPD search warrants—the Tumblr warrant, Google

18   warrant, AT&T warrant, and Residential warrant—violated his Fourth Amendment rights.  He presents

19   three categories of arguments: *first*, that each of the warrants relied on the unlawful initial viewing of the

20   photograph by Tumblr, NCMEC, and SFPD discussed above; *second*, that the Tumblr and Google

21   warrants' affidavits included material misrepresentations and omissions; and *third*, that the Tumblr and

22   Google probable cause statements lacked the requisite specificity.  Having already established above

23   that Tumblr, NCMEC, and Sgt. Worthington's warrantless searches of the image did not violate

24   Cofield's constitutional rights, the government addresses his second and third arguments in turn below.

25       When considering a search warrant, the reviewing court should give great deference to a

26

27   _____

28   [9] Cofield incorrectly states that "[i]t is not clear . . . whether the specific image uploaded to the blog . . . was ever reviewed by a Tumblr employee before it was sent to NCMEC and SFPD."  Mot. at 2. As noted, both the CyberTip Report and Tumblr's sworn declaration state otherwise.

magistrate's probable cause determination, and must consider whether the magistrate had a substantial basis to conclude that the warrant was supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). Where a magistrate has found probable cause, this finding should "not be reversed absent a finding of clear error." *United States v. Pitts*, 6. F.3d 1366, 1369 (9th Cir. 1993). The Supreme Court has admonished that "courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common-sense, manner." *Gates*, 462 U.S.at 236. The Ninth Circuit reiterated the scope of review in an en banc decision, stating that reviewing courts "are not in a position to flyspeck the affidavit" and that "the magistrate judge's determination should be paid great deference." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (quotations omitted).

### A.    Sgt. Worthington's search warrants were based on probable cause

A brief review of the progression of this investigation establishes that each of the four search warrants were supported by probable cause, i.e., that there was "a fair probability that contraband or evidence of a crime will be found in a particular place" to be searched. *Gates*, 462 U.S. at 238.

In late November 2017, Sgt. Worthington received a CyberTip from NCMEC, which provided the user's email address, username, and IP address. Def. Ex. A at 3. Based on that information, Sgt. Worthington determined that her "top priority" was to identify who posted the image on to the Tumblr account, using the CyberTip as the starting point. Worthington Decl. ¶ 7. She conducted an online search for the Tumblr username at that time, and found that there were numerous other child pornography images online associated with the user's account. *Id.* ¶ 10. Because the CyberTip identified a specific Tumblr username, it provided sufficient probable cause for her search warrant to Tumblr to determine who the user was and to see if there were any additional child pornography images present (including images that could not be found via a public search, e.g., privately-posted images). Sgt. Worthington also obtained a warrant to Google based on the Tip's identification of a Gmail account, and that warrant too was aimed at evidence of identity and possession of child pornography. *Id.* ¶ 8. Based on her knowledge of Google's products, she purposefully limited the Google warrant to those products which could store photographs or user information. *Id.* ¶ 11.

Sgt. Worthington received the Google returns a week later, which provided her with the subject phone number, and evidence that the user possessed additional child pornography images and had

1    engaged in explicit conversations with a minor.  *Id*. ¶ 13.  After conducting further investigation, she

2    linked the subject phone number to Cofield's Facebook page, and then matched the photographs on his

3    Facebook page and in his Google accounts with his prior mugshots.  Only at this point was Sgt.

4    Worthington "relatively certain" that Cofield was operating the Tumblr account and possessed child

5    pornography.  *Id*.  Ten days later (December 21), Sgt. Worthington obtained a search warrant to AT&T

6    for subscriber information based on the subject phone number to identify the subscriber.  The AT&T

7    returns came in the next day, and identified Cofield, his address, and that his account was active.  *Id*. ¶

8    16.  Then, on February 28, 2018, the Tumblr warrant returns arrived, and Sgt. Worthington learned that

9    there were over 1,000 images of child pornography associated with Cofield's account.  *Id*. ¶ 17.  Only

10   after receiving all of this information did Sgt. Worthington seek and obtain the Residential warrant

11   (which Cofield does not present any substantive challenge to).  *Id*. ¶ 18.

12       As such, Sgt. Worthington's step-by-step investigation took her from a single child pornography

13   image to identifying Cofield through evidence that she built through each warrant and his criminal

14   history, and eventually to a search warrant at his residence.  That is sufficient to defeat Cofield's motion

15   to suppress.  *See, e.g.*, *United States v. Cohen*, No. 217CR00114APGCWH, 2017 WL 4456043, at *4

16   (D. Nev. July 2, 2017), *report and recommendation adopted*, No. 2:17-CR-0114-APG-CWH, 2017 WL

17   4414016 (D. Nev. Oct. 3, 2017) ("Given all the circumstances set forth in the affidavit, including

18   the cyber tip which contained an image displaying coercion by force and possible violence against a

19   child, the follow-up investigation that connected the downloaded image to a particular computer located

20   at Cohen's address, and Cohen's criminal history, this Court has no difficulty finding that there was

21   a fair probability that evidence of the crime would be found at Cohen's address.").

22       **B.      The allegedly false or omitted statements did not undercut probable cause**

23       Cofield objects to a variety of information that he claims was either misrepresented or omitted.

24   Specifically, he asserts that Sgt. Worthington (1) falsely stated when the image had been uploaded and

25   that Cofield had "utilized" his Gmail address to upload it; (2) falsely stated that Cofield uploaded images

26   to another Tumblr user's blog; and (3) omitted a number of allegedly material facts.  None of his

27   arguments hold water.

28

1    **1.    Sgt. Worthington did not make any false statement with regard to when the image was uploaded or the relevance of Cofield's Gmail account**

2

3    Cofield first attacks the search warrant affidavits by claiming that Sgt. Worthington falsely stated

4    that (1) Cofield uploaded the image on November 8, 2017, and (2) that he utilized his Gmail address to

5    do so. *See* Mot. at 16-20.  His argument is premised on a single portion of the affidavits:

6    Tumblr reported the following:

7    On 11/08/17 at 21:12:00 UTC a Tumblr with the user name **chaz2076** with the IP Address of **162.238.124.187** utilizing the email of rxxcofieldgmail.com uploaded the filename: **78180748604.jpg** to their Tumblr blog address of **chaz2076.tumblr.com** in early part of

8    2014, beginning in February.

9    With regard to his first argument, Cofield compares the above language to the CyberTip, which

10   states that the Tip was created on November 8, 2017.  While Cofield then goes on to make bombastic

11   arguments regarding Sgt. Worthington's veracity, Cofield's parsed reading of the affidavits ignores the

12   fact that *all of the relevant, correct information* is in the affidavits, negating any argument that Sgt.

13   Worthington intended to "convey [a] false impression." Mot. at 18.  Specifically, Cofield simply

14   ignores the affidavits' statement that the image was uploaded to the Tumblr account "in the early part of

15   2014, beginning in February." Def. Ex. B at 232; Ex. C at 117.  That statement makes clear that

16   Cofield's uploading of the image dated back to at least 2014.  Moreover, the alleged ambiguity could be

17   resolved by adding a single colon, as done below:

18   On 11/08/17 at 21:12:00 UTC: a Tumblr with the user name **chaz2076** with the IP Address of **162.238.124.187** utilizing the email of rxxcofieldgmail.com uploaded the filename:

19   **78180748604.jpg** to their Tumblr blog address of **chaz2076.tumblr.com** in early part of 2014, beginning in February.

20   That single punctuation mark clarifies that Tumblr reported the image on November 8, 2017, and that

21   someone with the username chaz2076 uploaded the subject file, among others, beginning in February

22   2014.[10]  Those facts are indisputably true and consistent with what Sgt. Worthington intended to convey

23   in that paragraph.  *See* Worthington Decl. ¶ 9.  Cofield does not present any authority that what amounts

24   to a grammatical error constitutes a material misrepresentation.  In any event, given the "great

25   deference" owed to Magistrates and the Supreme Court's admonishment that reviewing courts should

26

27

28   [10] The "early part of 2014, beginning in February" statement refers to the CyberTip's four pages that list "Suspect's posting IPs" that date from February to March 2014.  *See* Def.'s Ex. A at USRC-4-7.

1   not employ a "hypertechnical" review of affidavits, the Court should reject Cofield's argument.  *Gates*,

2   462 U.S. at 236.

3        Cofield's second argument—that Sgt. Worthington falsely stated that he uploaded the image

4   using his Gmail account—fails for the same reason.  *See* Mot. at 16-17.  Sgt. Worthington's declaration

5   makes clear that she intended to communicate that the user had previously utilized that Gmail account in

6   association with the Tumblr blog, *not* that the user actually employed the Gmail account to upload the

7   specific file.  *See* Worthington Decl. ¶ 9.  A fair reading of the above language reflects that, and a

8   Magistrate Judge could reasonably infer that from the affidavit.  *Gates*, 462 U.S. at 240.  Even if the

9   Court were to conclude that Sgt. Worthington's language was not perfectly precise, that does not

10  provide a basis to conclude that the Magistrate Judge clearly erred in finding that there was probable

11  cause.  *Pitts*, 6 F.3d at 1369.  Likewise, that Sgt. Worthington was not familiar with the inner workings

12  of Tumblr's posting scheme does not support a finding that she recklessly or deliberately misrepresented

13  facts to the Magistrate Judge.  *See United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988) (affirming

14  decision that officer did not act recklessly or deliberately when he misrepresented a defendant's criminal

15  history because "he simply did not know how to read the California rap sheets").  In sum, Sgt.

16  Worthington's affidavits provided the requisite information that the magistrates needed to believe

17  probable cause existed that more evidence would be found.

18       Cofield then asserts that these purported falsehoods are exacerbated because Sgt. Worthington

19  did not include "boilerplate" language regarding how child pornography possessors maintain possession

20  of illicit images for long periods of time, and thus presents a staleness problem.  Mot. at 18, 28-29.  But

21  Cofield's staleness argument is premised on the passage of time from Cofield's last Tumblr post in early

22  2014, while ignoring the fact that Sgt. Worthington also located numerous other images associated with

23  Cofield's account in 2017 itself.  It is axiomatic that "[t]he mere lapse of substantial amounts of time is

24  not controlling in a question of staleness."  *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997)

25  (quoting *Dozier*, 844 F.2d at 707).  Instead, staleness must be evaluated "in light of the particular facts

26  of the case and the nature of the criminal activity and property sought," and information offered in a

27  search warrant will not be stale if "there is sufficient basis to believe, based on a continuing pattern or

28  other good reasons, that the items to be seized are still on the premises."  *Id.* (citations omitted).

1  Moreover, a staleness analysis should keep up with the times and technology, as Judge Posner has

2  advanced: "The most important thing to keep in mind for future cases is the need to ground inquiries

3  into 'staleness' and 'collectors' in a realistic understanding of modern computer technology and the

4  usual behavior of its users." *United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012).

5      Here, the facts provided in the affidavits were sufficient for the Magistrates to conclude that the

6  probable cause was not stale.  For instance, the affidavits make clear that after receiving the CyberTip—

7  and therefore within a month of seeking the search warrants—Sgt. Worthington "conducted an online

8  search for **chaz2076.tumblr.com** and discovered several archived images of nude underage teenage

9  males exposing their genitals."  Def. Ex. B at 232.  This would have indicated to the Magistrate that

10 explicit images associated with Cofield's account were still available and viewable online on Tumblr

11 near the time that the search warrant was submitted, and that the Gmail account would provide a viable

12 lead to find both additional images *and* indicia of user identity.  Given that an account holder's

13 information does not go stale in the same way that the presence of child pornography may (at least as

14 Cofield contends), the Magistrate certainly could have concluded that the search warrants provided

15 probable cause to search for the user's identity.  *See Bohannon*, Gov't Ex. 5, at 13 ("Regardless of

16 whether people tend to keep child pornography in cloud storage accounts for long periods of time, there

17 is a commonplace probability that such accounts contain evidence probative to discovering who used the

18 account to store child pornography in the past.  And a magistrate could draw that obvious inference

19 without the warrant expressly stating it.").  Moreover, the fact that Sgt. Worthington sought the search

20 warrant less than a month after viewing those images undermines any staleness concerns.  Cofield

21 ignores these facts in his briefing.  The affidavit also included that Sgt. Worthington had been assigned

22 the CyberTip on November 30, 2017; that Tumblr had reported that a user had uploaded child

23 pornography on to his blog; and that she had reviewed the file that was uploaded and described it as

24 explicit materials.  The Ninth Circuit and courts in this District have found similar facts sufficient to

25 demonstrate probable cause.  *See United States v. Nguyen*, 743 F. App'x 764, 766 (9th Cir. 2018)

26 (finding probable cause where law enforcement discovered an image on a computer and used the

27 associated IP address to find the customer's name and address for a residential search warrant);

28 *Wolfenbarger*, 2019 WL 6716357, at *25 (finding similar facts "plainly sufficient").

An additional point cuts against Cofield's staleness argument.  While the present affidavits do not include the "boilerplate" language that Cofield identifies, that within itself does not undermine the fact that there was a fair probability that evidence would be found through the search warrants because it is "not a new revelation" that possessors of child pornography "do not quickly dispose of their cache." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (collecting cases).  Judge Breyer's recent analysis in *Bohannon* is directly on point.  As here, the defendant in that case argued that the subject search warrant lacked probable cause in part because it did not "expressly state that child pornography might be stored indefinitely" in online storage.  Gov't Ex. 5, at 12.  And, as here, the defendant cited the Ninth Circuit's 1997 *Lacy* opinion, where the Court said in dictum that it was "unwilling to assume that collectors of child pornography keep their materials indefinitely."  119 F.3d at 746; Mot. at 17.  Judge Breyer rejected the argument and distinguished *Lacy*:

> *Lacy*'s dictum does not control the question whether there is a fair probability that child pornography located in a cloud storage account at one point might still be there.  By now, that people who collect child pornography tend to keep their materials for long periods is arguably a matter of common sense that any magistrate could infer.  Further, computing technology has changed dramatically since *Lacy* in ways that make it easier to store digital files indefinitely, the advent of cloud storage being just one example.  Therefore, *Lacy* does not prevent the Court from holding that the past presence of child pornography in cloud storage creates the probability, if not certainty, that child pornography is currently located in the account.

*Bohannon*, Gov't Ex. 5, at 14 (citation omitted).  While Tumblr is not a cloud storage company—though Google provides that service—the same analysis is equally applicable to social media platforms, where uploaded photos can be stored for years, as is apparent from the facts of this case.[11]  *Cf. Seiver*, 692 F.3d at 777 (holding that a search warrant affidavit's failure to apprise a magistrate that deleted files on a computer are still often recoverable is not sufficient to invalidate the warrant because that fact "is or should be common knowledge").  In sum, the Court should reject Cofield's staleness argument.

### 2.     The affidavits' statement that Cofield uploaded images to another user's blog does not undermine the Magistrate's finding of probable cause

Cofield next claims that Sgt. Worthington falsely stated that he uploaded sexually explicit

---

[11] By way of example, Facebook's Memories notifications often bump images uploaded years and years earlier to the user.  *See* https://about.fb.com/news/2018/06/all-of-your-facebook-memories-are-now-in-one-place/.

photographs on to another Tumblr user's blog in 2014, and therefore gave the false impression that Cofield was distributing sexual material.[12]  *See* Mot. 20-21.  Even accepting that Cofield is correct that Sgt. Worthington was mistaken in her statement, that single misstatement does not warrant suppression. Moreover, even if the Court were to excise that statement from the affidavits, they nevertheless presented sufficient probable cause.

As an initial matter, and as Sgt. Worthington explains in her declaration, her statement was borne of her assumption regrading Tumblr's posting scheme, Worthington Decl. ¶ 10, and that alone does not constitute the reckless or deliberate misrepresentation that Cofield must prove.  *See Dozier*, 844 F.2d 705 (rejecting claim that officer falsely or recklessly misrepresented defendant's criminal history when misrepresentation was because officer did not know how to read California rap sheets).  Moreover, Sgt. Worthington's confusion is understandable, given that the image had "via chaz2076" written directly below it, which would indicate that chaz2076 (Cofield) had posted the image himself.  Worthington Decl. ¶ 10.  Notably, Sgt. Worthington did not attempt to hide her uncertainty, instead noting that the image "***appeared to have been*** uploaded" to the other user's account.  Def. Ex. B at 232 (emphasis added).  Sgt. Worthington now understands that the other user in fact reposted the image from Cofield's Tumblr, which indicates that remnants of Cofield's blog were still repostable and viewable by the public, undermining Cofield's staleness claim and reasonable expectation of privacy in those images.

More importantly, even if the Court were to excise this portion of the affidavit, it does not change the probable cause analysis.  A search warrant is not rendered invalid "merely because some of the evidence included in the affidavit is tainted."  *United States v. Job*, 871 F.3d 852, 863–64 (9th Cir. 2017) (quoting *United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014)).  Instead, "[t]he warrant remains valid if, after excising the tainted evidence, the affidavit's 'remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'"  *Id.* (citation omitted).  Here, removing the fact that Cofield did not upload explicit images to another Tumbler user's webpage does

---

[12] Cofield is referring to the following language:

I conducted an online search for chaz2076.tumblr.com and discovered several archived images of nude underage teenage males exposing their genitals that appeared to have been uploaded to Tumblr by chaz206 to another Tumblr user's blog in 2014.

1   not affect whether Cofield himself *possessed* child pornography.  Cofield acknowledges this point by

2   premising his entire argument on the idea that the statement provided the false impression that "Cofield

3   ha[d] *distributed* sexual material involving minors."  Mot. at 20.  He presents no argument that this

4   statement is necessary to a probable cause determination for possession of child pornography—which is

5   the crime that the affidavits specifically cited.  *See, e.g.*, Def. Ex. B at 232 ("person under investigation

6   has committed a felony, to wit: 311.11(a)-Possession of Child Pornography").

7        Cofield's suggestion that this statement was somehow necessary to establish probable cause to

8   search his Gmail account similarly misses the point.  The probable cause to search the Gmail account

9   was based on its association with the Tumblr account and to assist in identifying who the user of the

10  Tumblr account was.  To correct Cofield's own analogy, *see* Mot. at 21, the search warrant sought

11  information from the Gmail account on the basis of contraband in a Tumblr account *because the Gmail*

12  *account was used to create the Tumblr account*, indicating that a fair probability existed that user

13  information from the Google account would assist in identifying the user of the Tumblr account.  *See*

14  Worthington Decl. ¶ 9 ("In my experience, a person's email address could be a useful avenue in leading

15  to the identity of the individual using the social media account.").  As such, Cofield fails to show that the

16  Magistrate committed "clear error" in approving the search warrants.  *Pitts*, 6. F.3d at 1369.

17          **3.    Sgt. Worthington did not intentionally or recklessly omit material facts, and**
                    **in any event, there would be sufficient probable cause even if the affidavits**
18                  **were supplemented with those facts**

19       Cofield next assails the warrants by claiming that Sgt. Worthington omitted four points: (1) that

20  the Tumblr account had not been logged into since March 31, 2014; (2) that a representative sample of

21  other chaz2076 blog posts were reviewed and not flagged as child pornography; (3) that the date Tumblr

22  discovered the subject image was unknown; and (4) that Sgt. Worthington did not disclose how the

23  image was identified (i.e., if it was reviewed by a representative or identified with hashing technology).

24  Mot. at 22.  None of these alleged omissions alter the analysis in Cofield's favor.

25       As an initial matter, Cofield fails to present any evidence that Sgt. Worthington deliberately or

26  recklessly omitted these facts.  A review of his brief reveals that he offers nothing more than one

27  conclusory statement after another simply alleging that Sgt. Worthington acted with ill intent.  *See* Mot.

28  at 22-24.  That is plainly insufficient, particularly in light of Sgt. Worthington's sworn declaration to the

1  contrary, *see* Worthington Decl. ¶ 12, and the wide berth between the alleged omissions here and the

2  kinds of omissions that have caused courts to conclude that statements were intentionally or recklessly

3  omitted in other cases. *See, e.g.*, *United States v. Sheikh*, No. 2:18-CR-00119-WBS, 2020 WL 4923696,

4  at *2 (E.D. Cal. Aug. 21, 2020) (finding reckless omission where affidavit failed to include "information

5  about the benefits alleged victims of forced labor receive or may receive").

6       Even if the Court were to accept that the above statements were deliberately or recklessly

7  omitted, it would then need to supplement the affidavit with the statements and consider if probable

8  cause still existed. *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014). Here, because "probable

9  cause [would] remain[] after amendment," there is no constitutional error. *Id.* (citation omitted). First,

10  the fact that the affidavits did not state that the Tumblr account's last login was 2014 is rendered

11  irrelevant because Sgt. Worthington's affidavits did reference that the subject image was uploaded in

12  "2014, beginning in February," indicating that probable cause was based, in part, on material from 2014;

13  and that Sgt. Worthington was able to locate images associated with Cofield's Tumblr account in 2017,

14  which undermines Cofield's suggestion of staleness. *See* Def. Ex. B at 232. Second, Cofield's illusory

15  linking the "representative sample" language to a claim that there was no additional child pornography

16  found on Cofield's account is also addressed by Sgt. Worthington's inclusion of the statement that she

17  conducted an online search in 2017 which led to the discovery of a number of additional illicit images

18  associated with Cofield's account. *See id.* Third, the fact the affidavit did not state the date on which

19  Tumblr discovered the image is related to Cofield's staleness argument, which does not invalidate the

20  warrants because the search warrant affidavits were *not* aimed *only* at discovering other child

21  pornography images, but also at identifying the user of the Tumblr and Google accounts. *See*

22  *Bohannon*, Gov't Ex. 5, at 12-13 (rejecting the same argument because "[l]aw enforcement sought not

23  only evidence of child pornography, but also evidence that would help them 'identify and arrest' a then-

24  unknown OneDrive user who had possessed child pornography"). Fourth, whether the images were

25  identified by individual review or through a hash value, *see* Mot. 23, 28, would change nothing. Even if

26  the image had only been identified by hash value—recall that it was in fact identified by PhotoDNA and

27  then also reviewed by a Tumblr employee—the fact that the image was found in conjunction with Sgt.

28  Worthington's 2017 search revealing images associated with Cofield's Tumblr provided sufficient

1  probable cause.[13]

2  ### C.    The Tumblr and Google search warrants meet the Fourth Amendment's specificity requirements

3  
4  Cofield next argues that the Tumblr and Google search warrants are void because they do not

5  meet the Fourth Amendment's specificity requirement.  He is wrong again.  The Ninth Circuit has

6  separated the specificity requirement into "'two aspects': "particularity and breadth . . . . Particularity is

7  the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement

8  that the scope of the warrant be limited by the probable cause on which the warrant is based."  *United*

9  *States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) (quoting *In re Grand Jury*

10  *Subpoenas*, 926 F.2d 847, 856-57 (9th Cir. 1991)).  Importantly, "[w]arrants which describe generic

11  categories of items are not necessarily invalid if a more precise description of the items subject to

12  seizure is not possible."  *Id.* (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)).

13  Although Cofield states that the warrants are overbroad "in multiple respects," each of his

14  arguments returns to the same core issue: his claim that the warrants are overbroad because the "Google

15  products are not connected to one another."  Mot. at 25; *id.* ("Here, again, the warrant conflates

16  Google's products.").  For support, Cofield refers back to his "Background section," but that section

17  itself is totally *devoid* of any citations.  *See* Mot. at 6-7.  Instead, and contrary to Cofield's position,

18  Google users employ the Google products in concert and often in repetitive fashion because Google is

19  well-known to be guilty of "endless app overlap."[14]  For instance, users employ Google Drive and

20  Google Photos so interchangeably that Google sought to clarify the relationship between the products.[15]

21  Cofield's protestations to the contrary do not render the warrants overbroad.[16]  It also bears emphasizing

---

22  
23  [13] Though he does not appear to raise this argument, to the extent that Cofield asserts that search via hash value is somehow insufficient, that argument has been rejected by other courts, including from this District.  *See, e.g.*, *United States v. Reddick*, 900 F.3d 636, 639 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1617 (2019) (collecting cases); *accord Bohannon*, Gov't Ex. 5, at 10-11.

24  
25  [14] *Google's endless app overlap: What's going on?*, https://www.androidauthority.com/google-app-overlap-870217/; Farhad Manjoo, *Deja Google: Why does the search company keep duplicating its own efforts*, Slate (Feb. 11, 2010),  https://slate.com/technology/2010/02/why-does-google-keep-copying-itself.html.

26  
27  [15] *Changing how Google Drive and Google Photos work together*, https://blog.google/products/photos/simplifying-google-photos-and-google-drive/

28  [16] Cofield's belief "there is little reason to store photos in Google Drive" does not mean all users agree with his perspective, *see* Mot. at 25—indeed, law enforcement found child pornography images in

that Sgt. Worthington was familiar with Google and its numerous products, but nevertheless limited the search warrant to the four products (Gmail, Google Photos, Google Drive, and Google+) that she believed would be most likely to contain child pornography. *See* Worthington Decl. ¶ 11. Given the interchangeability of the Google products, the Magistrate's conclusion is certainly supported by commonsense, which is all that is required. *See Gourde*, 440 F.3d at 1069.

Cofield also appears to argue that the Google warrant was overbroad as to Google Drive specifically because there was no evidence that photographs were uploaded to that specific platform. Mot. at 26. But no such issue exists because users can easily upload photographs to their Google Drive; and in fact, during all times relevant to this case, any photograph that Cofield uploaded to his Google Photos would have automatically been saved to his Google Drive. Cofield, notably, does not raise a similar argument with respect to his Google Photos account. *See id*. Even assuming *arguendo* that his argument is valid, there was undoubtedly probable cause to seek from Google identifying information associated with the Gmail address (rxxcofield@gmail.com) that was used as the login for a Tumblr account that contained child pornography. Accepting Cofield's argument that "any imaginable content" can be uploaded into a Google Drive, *id.*, a Magistrate could certainly have concluded that there was a "fair probability" that evidence of attribution would have existed in the Google Drive. *Gourde*, 440 F.3d at 1069. Cofield's demand for more ignores that the requisite standard is only a fair probability, "not certainty or even a preponderance of the evidence." *Id*. In any event, the inevitable discovery rule applies. *See* § III(B), *infra*.

Cofield's particularity claims are also flawed. Although Cofield claims the Google and Tumblr warrants set no meaningful boundaries, they in fact do: they are limited by a specific date range and identify the specific kinds of items to be searched. *See* Def. Ex. B at 228; Ex. C at 173. Judge Breyer recently rejected a similar argument on two grounds: *first*, that a similar list of items (including "all account information" and "[a]ll content in OneDrive account") was not overly broad; and *second*, that "[t]o the extent that the warrant described the account information in slightly general terms, a 'more precise description [was] not possible'" because the officer nor the magistrate "could not have known

---

*Cofield's own* Google Drive.

1   precisely where in the OneDrive account evidence would be stored." *Bohannon*, Gov't Ex. 5, at 4, 16-

2   17 (quoting *Lacy*, 119 F.3d at 746).  That same analysis is equally applicable here.  Further, Cofield's

3   argument that the Google warrant does not include a meaningful time limitation because it requests to

4   search "contents of the Google+ Photos account including, *but not limited to* " a specific date range,

5   Mot. at 28, both incorrectly interprets that statement and, more importantly, invites the exact kind of

6   "hypertechnical" reading and "fly-specking" that the Supreme Court and Ninth Circuit have rejected.

7   *See Gates*, 462 U.S. at 236; *Gourde*, 440 F.3d at 1069.  Accordingly, the Court should reject Cofield's

8   specificity arguments.

9         Further, because all of Cofield's arguments with respect to the Tumblr and Google warrants fail,

10  his piggy-back contention that the AT&T and Residential search warrants are invalid because they rely

11  on the Tumblr and Google search warrants should be also rejected.  *See* Mot. at 29.

12  **III.    The Exclusionary Rule Does Not Apply in this Case**

13        Even if the Court concludes that some constitutional violation occurred here—though it should

14  not, for the reasons stated above—it should not apply the exclusionary rule for three reasons.

15        **A.    Sgt. Worthington acted in Good Faith**

16        First, suppression is not warranted because Sgt. Worthington and SFPD relied on the validly-

17  issued search warrants in good faith.  As the Supreme Court held in *United States v. Leon*, the marginal

18  or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on

19  a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.  468 U.S.

20  897, 922 (1984).  Unless a "reasonably well trained officer would have known that the search was illegal

21  in light of all of the circumstances," the fruits of an illegal search should not be suppressed.  *Herring v.*

22  *United States*, 555 U.S. 135, 145 (2009) (citation and quotations omitted).  It "is the magistrate's

23  responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue

24  a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an

25  officer cannot be expected to question the magistrate's probable-cause determination," *Leon*, 468 U.S. at

26  921, and "suppression of evidence is not an appropriate remedy where an officer executes a warrant he

27  reasonably believed to be valid," *United States v. Meek*, 366 F.3d 705, 714 (9th Cir. 2004).

28        There is no basis to suggest that Sgt. Worthington should have suspected the search warrants

1    were invalid in this case.  Here, Sgt. Worthington began diligently working on the case as soon as the

2    CyberTip arrived on her desk.  The CyberTip itself noted that Tumblr had found an illicit image on a

3    user's account, and that a Tumblr representative had reviewed that image.  Sgt. Worthington then

4    searched on the internet to see if additional images were connected with the Tumblr username—and

5    found a trove of them still available on the internet.  She then sought search warrants based on the

6    information available to her for, among other things, evidence to identify the user and to determine if he

7    possessed more child pornography.  It was also reasonable for Sgt. Worthington to rely on validly-issued

8    warrants based in part on an image that been reported by Tumblr less than a month prior.  While Cofield

9    quibbles with the exact wording of the warrants or claims that some may be slightly overbroad, no such

10   issues can fairly impute a lack of good faith on to Sgt. Worthington's reliance on the issued warrants.

11   Sgt. Worthington followed expected investigative steps to determine who posted child pornography on

12   the internet in this case and if there were more images associated with this individual.

13          Finally, suppression is an unfairly harsh remedy in a scenario where government agents did

14   nothing wrong.  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that

15   exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid

16   by the justice system."  *Herring*, 555 U.S. at 144.  Sgt. Worthington's warrant applications and the

17   subsequent searches were reasonable.  Even at worst, one would be hard pressed to identify exactly what

18   Sgt. Worthington did that would warrant suppression for the purposes of deterrence to protect the justice

19   system.  For example, even the delay in this case cannot be attributed to Sgt. Worthington, given that

20   Tumblr only "implement[ed]" PhotoDNA in 2017, which "surfaced the reported content."  Gov't Ex. 1,

21   ¶ 8.  Moreover, because the alleged omissions "were readily apparent from the face of the affidavit,"

22   there can be no insinuation that Sgt. Worthington omitted this information in a deceptive manner.

23   *United States v. Thayer*, No. CR-07-812-DLJ, 2008 WL 5102529, at *6 (N.D. Cal. Dec. 2, 2008)

24   ("Notwithstanding Thayer's criticism of the agent's writing style, there was no misrepresentation of fact

25   or omission of material information in the affidavit.  There was no police misconduct.").

26          **B.    The Inevitable Discovery exception applies**

27          The Ninth Circuit has stated that the inevitable discovery exception "is available when the

28   government demonstrates, by a preponderance of the evidence, that it would inevitably have discovered

1  the incriminating evidence through lawful means.  The government can meet its burden by

2  demonstrating that, 'by following routine procedures, the police would inevitably have uncovered the

3  evidence.'"  *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000) (citations omitted).

4        The inevitable discovery exception certainly applies to this case.  Take, for example, Cofield's

5  argument regarding the search of his Google Drive.  *See* Argument, § II(C), *supra*.  Even if the Court

6  were to conclude that the Google warrant was overbroad with respect to Google Drive, Sgt. Worthington

7  lays out the investigative steps that she would have taken if she did not obtain the Google warrant (or

8  only was able to obtain identity-related information) that would nevertheless led to sufficient probable

9  cause to obtain the Residential warrant, which in turn would have permitted her to access Cofield's

10  Google Drive account.  *See* Worthington Decl. ¶¶ 21-23.  As she explains, if she was only able to obtain

11  the Google warrant for user information—which there was certainly probable cause for, as discussed

12  above, *see* Argument, § II(B)—she would have obtained the subject phone number; used the Accurint

13  search to identify AT&T as the relevant provider; sought the AT&T warrant which would have led to

14  Cofield's name and address; and then once the Tumblr warrant indicated that over 1,000 child

15  pornography images associated with Cofield's Tumblr existed, sought the Residential warrant as a

16  matter of routine procedure.  *Id.* ¶ 21.  Significantly, the Residential warrant permitted SFPD to search

17  "[a]ny cloud storage applications found on any media device."  Def. Ex. E at 39.  Once SFPD had access

18  to the cell phones and computers seized from Cofield's residence, those would have inevitably led them

19  to all of the Google products he had access to, including his Google Drive.

20        Notably, the inevitable discovery exception would apply even if the Court were to throw out the

21  *entire* Google warrant and returns.  As Sgt. Worthington lays out, because the CyberTip listed AT&T as

22  the IP address's service provider, she would have subpoenaed AT&T for identifying information.

23  Worthington Decl. ¶ 22.  That, in turn, would have provided her with Cofield's name and address, and

24  she would have proceeded down the same investigative path outlined above.  *Id.*  Relatedly, once she

25  learned that there were over 1,000 images on Tumblr, a subsequent search warrant to Google with the

26  benefit of that (and related) facts would have provided sufficient probable cause—the only difference

27  being a matter of a few months.  *Id.* ¶ 23.  As such, even if the Court finds some constitutional violation,

28  the warrants fall within the inevitable discovery exception.

C.    **The Exclusionary Rule is not appropriate in any event**

Even if Sgt. Worthington erred in searching Cofield's accounts or residence pursuant to the four search warrants in this case, suppressing the evidence from those searches would be unjustified. Fourth Amendment violations do not automatically trigger suppression, which is not a personal right or a form of redress. *Davis v. United States*, 564 U.S. 229, 236 (2011). The "sole purpose" of the exclusionary rule is to deter future Fourth Amendment violations. *Id.* at 236–37. And the rule applies only if the benefits of deterrence outweigh suppression's social costs. *Herring*, 555 U.S. at 140-41.

The balancing test militates only against suppression here. Sgt. Worthington did not flagrantly violate the Fourth Amendment. To the contrary, she diligently worked to obtain four separate search warrants based on probable cause. Given that all of Cofield's arguments are premised on parsing the affidavits for immaterial issues or ambiguities, or on a time-delay that cannot be fairly attributed to law enforcement—Sgt. Worthington sought three of the four warrants within two months of receiving the CyberTip—any deterrence benefit from suppressing the evidence from the warrants would be minimal at best. On the other hand, suppression would impose significant costs here: letting a guilty defendant "go free." *Herring*, 555 U.S. at 141. Cofield, a felon convicted of possessing child pornography, again possessed child pornography images numbering into the thousands. The results of the warrants, and Sgt. Worthington's substantial effort in this case, provide clear evidence of his guilt. Suppression would mean he walks free without consequence. Because the social costs of suppression outweigh any deterrence benefit, the exclusionary rule should not apply here.

IV.    **No *Franks* or Evidentiary Hearing is required**

Alternatively, Cofield claims that he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), based on the alleged misstatements and omissions in the search warrant affidavits. In making a *Franks* claim, Cofield has the burden of demonstrating by a preponderance of the evidence that an evidentiary hearing and suppression are warranted. *United States v. Tham*, 960 F.2d 1391, 1395 (9th Cir. 1992). A defendant seeking a *Franks* hearing must make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). This standard applies not

only to false statements made in the affidavit, but also to allegedly reckless or intentional omissions of facts. *Tham*, 960 F.2d at 1395. "In doubtful cases, preference should be given to the validity of the warrant." *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986).

This is no easy standard to satisfy. The "inquiry begins with a presumption that an affidavit in support of a search warrant is valid." *Meek*, 366 F.3d at 716 (citing *Franks*, 438 U.S. at 171). Although the Fourth Amendment requires that a search warrant be supported by a "truthful" factual showing, it does not require perfection: rather, it requires "truthful" information "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. A negligent mistake or omission, alone, does not satisfy the *Franks*' state of mind requirement necessary to trigger an evidentiary hearing. *United States v. Garcia-Cruz*, 978 F.2d 537, 541 (9th Cir. 1992).

Cofield fails to make either showing necessary under *Franks*. With respect to the purported false statements, the three statements that Cofield points to are either a result of his own constricted reading of the affidavits or, at most, imperfect drafting. Even if the Court concluded that Sgt. Worthington was negligent—which is generous to Cofield—that would still be insufficient. *See United States v. Hodge*s, 3 F. App'x 608, 610 (9th Cir. 2001) ("Officer Schmidt's admission that his affidavit contained an incorrect statement regarding Randy's (the narcotic detector dog) prior seizures does not meet the substantial threshold showing of an intentional false or reckless statement. Inclusion of the statement was an innocent mistake, or at most negligent, both of which are insufficient under *Franks*."); *United States v. Staves*, 383 F.3d 977, 5 (9th Cir. 2004). The same must be said with regard to the alleged omissions. For instance, that Sgt. Worthington did not include facts about how and when Tumblr identified the image is immaterial because Tumblr is a private actor whose actions are not constrained by the Fourth Amendment—a point that Cofield all but concedes—and because those issues go *only* to Cofield's staleness contention, which entirely ignores the probable cause to search the subject accounts for indicia of identification. Accordingly, Cofield is not entitled to a *Franks* or evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Cofield's motion in its entirety. Moreover, because Cofield has failed to meet the substantial showing required under *Franks*, the Court should decide the motion without an evidentiary hearing.

1

2   DATED:  12/23/2020                               Respectfully submitted,

3

4                                                    DAVID L. ANDERSON
                                                     United States Attorney

5

6                                                    _/s/ Ankur Shingal_____
                                                     ANKUR SHINGAL
7                                                    Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28